213 P.3d 258

**STATE of Arizona, Appellee,**

v.

**Harold Arthur FISH, Appellant.**

**No. 1 CA–CR 06–0675.**

Court of Appeals of Arizona, Division 1, Department B.

June 30, 2009.

---

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Law Office of Lee Phillips, P.C. by Lee Phillips, Flagstaff, Attorney for Appellant.

Law Office of John Trebon, P.C. by John Trebon, Flagstaff, Attorney for Appellant.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Harold Arthur Fish ("Defendant") appeals his conviction and sentence for second degree murder. He challenges various evidentiary rulings made by the superior court, contends two instances of juror misconduct entitle him to a new trial and raises six issues related to the final jury instructions. For the reasons stated below and in our separate memorandum decision, we reverse and remand for a new trial.[1]

## BACKGROUND [2]

¶ 2 In May 2004, Defendant was completing a solo day-hike in a remote area of

---

1. In a separate memorandum decision, we address other issues raised on appeal which do not require reversal but which may re-occur on remand. *See* Arizona Rule of Civil Appellate Procedure ("Ariz. R. Civ.App.P.") 28(g).

2. We view the facts in the light most favorable to sustaining the verdict and we resolve all reasonable inferences against Defendant. *State v. Greene*, 192 Ariz. 431, 436–37, ¶ 12, 967 P.2d 106, 111–12 (1998) (citation omitted).

Coconino National Forest near Strawberry when he noticed the Victim off to the side of the trail thirty yards ahead of him at the top of a hill or grade apparently lying on the ground in front of a car. After Defendant waved to the Victim, two of three unleashed medium to large sized dogs near the Victim began to run down the hill at "full gallop" as if to attack the Defendant, barking and growling.[3] Defendant yelled to the Victim, a forty-three-year-old man, to restrain or control the dogs, but the Defendant did not recall the Victim at that point doing anything or at least Defendant concluded the Victim could not control the dogs. Perceiving the Victim would be unable to control the dogs, Defendant dropped his hiking stick, grabbed his ten millimeter Kimber semiautomatic handgun, and when the dogs were about seven feet from him fired a "warning shot" into the ground in front of the approaching dogs, dispersing them to the sides of the trail.

¶ 3 At this point, the Defendant saw the Victim halfway down the hill accelerating towards the Defendant. The Defendant yelled at the Victim that he had not hurt the dogs, but the Victim continued to come at him, with his eyes crossed and looking crazy and enraged, cursing at the Defendant and yelling that he was going to hurt the Defendant. The Defendant, who was pointing the gun at the ground, yelled to the Victim to get back and leave the Defendant alone, but the Victim continued to race toward him, accelerating, yelling profanities and swinging his arms. The Defendant thought the Victim was going to kill him and he had nowhere to run because the dogs were at either side of the trail. At one point the Defendant yelled to the Victim to stop or he would shoot. The two men continued yelling at each other with the Victim "doing this weird kind of punching thing" until the Victim was about five to eight feet from Defendant, at which point Defendant shot the Victim three times in the chest. Defendant told investigators the entire incident lasted no more than three seconds, or alternatively, five to ten seconds. In various statements he made to investigating officers, Defendant said the Victim yelled something like, "Don't shoot! Don't shoot! Don't shoot my dogs!" At the time of the shooting, Defendant did not know the Victim, had never met him before, and knew nothing about him.

¶ 4 Defendant covered the Victim with a tarp and put Defendant's backpack under the Victim's head. Defendant then walked to nearby Highway 87 where he flagged down a passing motorist who, per Defendant's request, contacted emergency personnel. Paramedics arrived and determined the Victim was dead. Defendant gave statements to the various law enforcement officers who responded to the scene, and he testified in front of the grand jury.

¶ 5 At trial, Defendant argued he was acting in self-defense when he shot the Victim.[4] Although Defendant did not testify at trial, his wife and daughter testified, as did numerous character witnesses who offered general opinions as to the Victim's and the dogs' propensity for aggression and violence. In addition, the jury was given portions of Defendant's testimony to the grand jury and

3. The Victim owned the dog, "Maggie," that did not run towards Defendant. On the day of the incident, the Victim picked up the other dogs, "Sheeba" and "Hank," from the Payson Humane Society to exercise them.

4. At the time of the offense, the applicable justification statute placed on defendants the burden to prove a claim of self-defense by a preponderance of evidence. Arizona Revised Statutes ("A.R.S.") section 13–205(A) (2001). Effective April 24, 2006—almost two weeks after trial commenced in this case—the legislature amended A.R.S. § 13–205(A) to require the State to prove beyond a reasonable doubt that a defendant claiming self-defense did not act with justification. See 2006 Ariz. Sess. Laws, Ch. 199, § 2. As trial proceeded, the parties argued whether the amendment was retroactive and thereby applicable to this case. The superior court held the amended statute not retroactive. The Arizona Supreme Court addressed the retroactivity issue in another case and held the amendment was not retroactive. Garcia v. Browning, 214 Ariz. 250, 254, ¶ 20, 151 P.3d 533, 537 (2007). Thus, to succeed on his self-defense claim, Defendant had to prove by a preponderance of evidence that (1) a reasonable person in Defendant's position would have believed physical force was immediately necessary to protect against the Victim's attempted use of unlawful physical force; and, (2) Defendant used no more physical force than would have appeared necessary to a reasonable person in Defendant's position.

heard testimony about Defendant's statements to police after the shooting. After hearing fifteen days of testimony and considering over 145 exhibits, the jury found Defendant guilty as charged. The superior court sentenced Defendant to a mitigated term of ten years' imprisonment. This timely appeal followed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and – 4033(A)(1), (3) (Supp.2008).

## DISCUSSION

¶ 6 By our count, Defendant raises approximately twenty-three issues on appeal.[5] In this opinion we address the several evidentiary issues and jury instructions.

## I. Evidentiary Rulings on Victim's Specific Prior Acts

¶ 7 Defendant contends that the superior court erred in excluding proffered evidence of prior violent acts by the Victim, most of which surrounded instances involving his dog. We conclude that while the court correctly ruled that much of this evidence was inadmissible under Arizona Rule of Evidence ("Rule") 404(a)(2), the court may have erred in precluding evidence of prior specific acts of violence related to the Victim's relationship to dogs under Rule 404(b)(2). Because we reverse and remand for a new trial on other grounds, the superior court should reconsider this evidentiary ruling if such evidence is offered at a new trial.

## A. Standard of Review on Evidentiary Issues

¶ 8 We review a superior court's evidentiary rulings for abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60, 84 P.3d 456, 473 (2004); *State v. Salazar*, 182 Ariz. 604, 610, 898 P.2d 982, 988 (App.1995). An abuse of discretion occurs when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297,

n. 18, 660 P.2d 1208, 1224 n. 18 (1983). An abuse of discretion also occurs when a discretionary finding of fact is not based on any evidence. *United Imports and Exports, Inc. v. Superior Court*, 134 Ariz. 43, 46, 653 P.2d 691, 694 (1982). If we find there was error in admitting or excluding evidence, we must also determine whether that error was harmless, *i.e.*, whether we can say beyond a reasonable doubt that the error did not contribute to or affect the verdict in the sense that the actual verdict rendered "was surely unattributable to the error." *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39, 189 P.3d 366, 373 (2008) (internal quotation marks and citations omitted).

## B. Procedural History and Arguments of the Parties on Exclusion of Prior Specific Acts of the Victim

¶ 9 The State moved *in limine* to exclude evidence of the Victim's character as to violence and the Victim's prior acts of violence. Defendant argued that evidence of specific aggressive acts of the Victim, especially when related to his relationship to dogs, was admissible under a number of theories under Rule 404(a), including to show Defendant's justifiable fear of the Victim and that the Victim was the first aggressor. Defendant also argued that the prior act evidence was admissible under Rule 404(b) to show the Victim's motive and intent in attacking Defendant and Defendant's credibility. Defendant attached to his response detailed affidavits from a number of witnesses explaining the basis for their conclusion that the Victim was aggressive and violent especially in any confrontation dealing with his dogs. Those affidavits showed specific instances of violent confrontation by the Victim similar to the same conduct Defendant claimed he encountered with the Victim—that when confronted about his dog, the Victim became irrationally aggressive and threatening, got a wild look in his eyes and began thrashing the air as if to attack the person he was relating to or physically pushing that person.

---

5. Defendant also requests we apply the cumulative error doctrine to find he is eligible for a new trial. However, cumulative error only applies to cases involving allegations of prosecutorial mis-

conduct. *State v. Hughes*, 193 Ariz. 72, 78–79, ¶ 25, 969 P.2d 1184, 1190–91 (1998). Defendant raises no issue of prosecutorial misconduct and we will not consider his request.

¶ 10 The superior court granted the State's request in part. It stated that evidence of the Victim's specific acts of prior aggressive behavior to prove the Victim's conduct on the day of the shooting, while relevant to self-defense, was generally inadmissible because it had slight probative value compared to the risk of misuse by the jurors. The court noted that an exception existed if the character or trait was an essential element of the defense, but the court held that the Victim's character or trait for violence was not an essential element of the defense. Moreover, in homicide cases, such specific act evidence was only admissible if a defendant had been aware of such evidence prior to the alleged crime. The court then concluded that the specific act evidence was *not* relevant to the self-defense claim and on a practical basis could not have influenced Defendant's mind because he was unaware of such acts prior to the shooting. The court also held that such specific act evidence as it related to the Victim's intent or motive was *not* relevant to the self-defense claim. However, the court held that general reputation or opinion evidence as to the Victim's character for violence was admissible even if not known by the Defendant prior to the shooting to establish whether the Victim or the Defendant was the first aggressor. The court held that such general evidence would be admitted to help the jury decide issues about the Victim's conduct prior to the shooting and to corroborate Defendant's description of the events. The court also held that such general opinion testimony should be admitted under Rule 403.

¶ 11 Defendant moved the court to reconsider its ruling, pointing to his alternative arguments concerning first aggressor, credibility and the Victim's motive or intent. The court summarily denied the motion for reconsideration, holding that it had considered those other arguments, but found them meritless and stating alternatively that the probative value of any such evidence would be substantially outweighed by undue prejudice under Rule 403.

¶ 12 After the jury returned its verdict, Defendant moved for a new trial arguing *inter alia* that the court erred in precluding admission of the Victim's prior violent acts. As part of that argument, Defendant pointed out that the prior violent acts were particularly important because the State had attacked Defendant's credibility as to the Victim's conduct on the date of the shooting. The court denied the motion, stating that there was a sufficient record to appeal the issues and it would not revisit its ruling on admission of specific evidence.

¶ 13 On appeal, Defendant argues that the specific act evidence should have been admitted to prove: (1) The Victim was the initial aggressor; (2) Defendant's state of mind at the time of the altercation and that he acted reasonably in using deadly force; (3) The Victim intended to harm and had a motive to attack Defendant; and (4) To corroborate Defendant's account of the Victim's violent and threatening conduct. More specifically, Defendant contends that under Rule 404(a)(2), the modern trend of cases permits the use of specific prior acts of the Victim regardless of whether the Defendant knew of those acts at the time of the crime to show either that the Victim was the first aggressor or that Defendant justifiably feared for his life and acted reasonably to defend himself. Defendant also argues that pursuant to Rule 404(b), the specific act evidence should have been admitted to corroborate his version of the confrontation, to show the Victim's motive and intent to assault Defendant, and to show who was the initial aggressor. As part of this argument, Defendant contends that the State opened the door to such evidence when it attacked Defendant's credibility by arguing to the jury that the Victim was not intending to attack the Defendant, but was merely retrieving his dogs.

¶ 14 The State contends that the superior court did not err because: (1) Evidence of the specific prior acts of the Victim was admissible under Rules 404(a)(2) and 404(b) only if Defendant was aware of those prior acts at the time of the shooting; (2) The court properly balanced the probative nature of that evidence against the possibility of undue prejudice under Rule 403; and (3) All purported error was harmless given the general reputation evidence admitted as to the Victim's violent nature. The State does not

respond to the Defendant's argument that the specific act evidence was admissible because the State opened the door to such evidence.

## C. The Common Law in Arizona

¶ 15 Prior to the adoption of the Arizona Rules of Evidence, Arizona common law gave broad discretion to trial courts to determine whether evidence of prior violent acts of a victim was admissible when a defendant claimed self-defense. Three rules governed the admissibility of such prior act evidence. First, such acts, if *unknown* by the defendant at the time of the charged crime, might be admissible to show who was the actual aggressor but only if they bore some relationship to or grew out of the same transaction as the one in which the homicide occurred. *Lepker v. State,* 40 Ariz. 186, 192, 11 P.2d 351, 353 (1932); *Mendez v. State,* 27 Ariz. 82, 84–86, 229 P. 1032, 1032–33 (1924); *State v. Canedo,* 115 Ariz. 60, 63, 563 P.2d 315, 318 (App.1977), *vacated on other grounds,* 125 Ariz. 197, 608 P.2d 774 (1980). As the Arizona Supreme Court explained, admissibility should be left to the trial court to weigh such factors as the relationship between the prior acts and the incident in question, whether the acts showed who was the initial aggressor and whether they shed light on the reasonableness of the defendant's state of mind in using deadly force. *Mendez,* 27 Ariz. at 86–87, 229 P. 1032 at 1033–34 [6]; *State v. Griffin,* 99 Ariz. 43, 47, 406 P.2d 397, 399 (1965). In *Griffin,* 99 Ariz. at 47, 406 P.2d at 399, the court noted the trend was toward allowing specific act evidence to go to the jury when it might assist the jury in determining whether defendant's claim of self-defense was *bona fide* and rooted in an honest belief of impending danger at the time he acted.

¶ 16 Second, evidence of prior specific acts of the victim *known* to the defendant at the time of the crime was admissible to show both the identity of the aggressor and whether the defendant justifiably feared for his life at the time of the crime. *State v. Young,* 109

Ariz. 221, 223, 508 P.2d 51, 53 (1973) (specific acts of known prior violence by victim admissible to show defendant's state of mind and that decedent was of a violent and turbulent disposition); *State v. Jackson,* 94 Ariz. 117, 120–21, 382 P.2d 229, 231–32 (1963) (specific acts of prior violence by victim admissible if known by defendant to show defendant's state of mind); *State v. Zamora,* 140 Ariz. 338, 341, 681 P.2d 921, 924 (App.1984) (specific instances of prior violence known by defendant admissible to show state of mind).

¶ 17 Third, evidence of the general reputation of the victim for violence could be admitted to show the identity of the aggressor regardless of the defendant's prior knowledge. *Griffin,* 99 Ariz. at 46–47, 406 P.2d at 398–99 (unknown general reputation of the victim admissible to show who the aggressor was); *Lawrence v. State,* 29 Ariz. 247, 262–65, 240 P. 863, 869–70 (1925) (victim's general reputation for violence admissible without defendant knowing of such reputation to show identity of aggressor). *See also Canedo,* 115 Ariz. at 62, 563 P.2d at 317 (summarizing rules that general reputation of victim as violent was admissible to establish the identity of the aggressor and defendant's state of mind and specific acts known by defendant admissible to show defendant's state of mind). *Cf. State v. Birdsall,* 116 Ariz. 196, 198, 568 P.2d 1094, 1096 (App.1977) (unknown prior acts of victim inadmissible).

¶ 18 We have not revisited the admissibility of unknown specific acts of violence by a victim since the adoption of the Arizona Rules of Evidence except to hold that only known acts of violence were admissible if offered to prove whether the defendant had a reasonable belief that he was in danger. *E.g., State v. Santanna,* 153 Ariz. 147, 149, 735 P.2d 757, 759 (1987) (applying Arizona Rules of Evidence and stating that specific prior violent acts admissible if known to defendant to show defendant's state of mind); *State v. Connor,* 215 Ariz. 553, 559, ¶¶ 14–16, 161 P.3d 596, 602 (App.2007) (specific act evidence is admissible if defendant was aware of such prior acts because knowledge

---

**6.** The court ultimately affirmed the superior court's exclusion of the specific act evidence on the basis that the prior specific acts were not

sufficiently related to the incident. *Mendez,* 27 Ariz. at 88, 229 P. at 1034.

of the victim's disposition "may have affected [his or her] thinking about the need to respond with deadly physical force;" unknown prior acts inadmissible for such purpose); *State v. Williams,* 141 Ariz. 127, 130, 685 P.2d 764, 767 (App.1984) (to show defendant's state of mind, evidence of specific acts of violence by a deceased may be admissible only "when those acts were personally observed by the defendant or made known to him prior to the homicide."). *Cf. State v. Taylor,* 169 Ariz. 121, 124, 817 P.2d 488, 491 (1991) (defendant asserting self-defense may introduce evidence of known specific acts of violence by the victim to show he or she "was justifiably apprehensive of the [victim]"); *State v. Spreitz,* 190 Ariz. 129, 146, 945 P.2d 1260, 1277 (1997) (habit of victim in refusing to accept rides admissible, habit being a regular or semi-automatic response to a repeated specific situation).

¶ 19 Thus, we must determine whether the broad discretionary common law rules described above survived the adoption of the Arizona Rules of Evidence. We conclude that the first rule above, permitting discretionary admission of unknown prior acts of the victim, did not survive the adoption of Rule 404(a).

## D. The Arizona Rules of Evidence

¶ 20 Unlike the common law which granted trial courts broad discretion to admit evidence of specific prior acts of violence by a victim, the Rules generally prohibit admission of such acts subject to certain exceptions. The basic principle is stated in Rule 404(a), which generally prohibits admission of evidence of a person's character for the purpose of proving action in conformity therewith. *See* Rule 404(a) ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion...."). Rule 404(a)(2) provides an exception to this general rule, permitting a defendant to introduce evidence of a "pertinent trait of character of the victim of the crime" to establish conformity therewith. Rule 405, however, governs the method of proving the victim's character, limiting the form such evidence may take to "testimony

as to reputation or by testimony in the form of an opinion" (Rule 405(a)) or permitting admission of specific acts when "character or a trait of character ... is an essential element of a ... defense...." (Rule 405(b)); *United States v. Keiser,* 57 F.3d 847, 853–54 (9th Cir.1995). However, Rule 404(b) provides in relevant part that evidence of "other ... acts ... may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See Taylor,* 169 Ariz. at 125, 817 P.2d at 492 (list of other purposes of Rule 404(b) is not exclusive; if evidence is relevant for any purposes other than showing the victim's criminal propensities, it is admissible even though it refers to his prior bad acts).

¶ 21 Accordingly, evidence of specific acts of violence by a victim generally is inadmissible under Rule 404(a) unless the victim's character is an essential element of a claim or defense under Rule 405(b) or the evidence is admissible under Rule 404(b). As explained in *State v. Lehman,* 126 Ariz. 388, 391, 616 P.2d 63, 66 (App.1980), the reasons for such limitations are that specific act evidence tends "to arouse prejudice, to confuse, to surprise, and to consume time" (internal quotations omitted). This replaces the more general discretionary admission of such specific act evidence prior to adoption of the rules. *See Mendez,* 27 Ariz. at 85, 229 P. at 1033 ("The trend ... of the more recent decisions appears to be in the direction of allowing to go before the jury evidence of particular acts of violence and turbulence by the deceased towards third persons.... [T]he true guide should be a reasonable discretion....").

¶ 22 This reading of the rules of evidence is in accord with the interpretation of the analogous Federal Rules of Evidence and similar state rules of evidence. James A. Adams, *Admissibility of Proof of an Assault Victim's Specific Instances of Conduct as an Essential Element of a Self–Defense Claim Under Iowa Rule of Evidence 405,* 39 Drake L.Rev. 401, 405–12 (1990) ("Adams"); *Cf.* Andrew G. Scott, *Exclusive Admissibility of Specific Act Evidence in Initial–Aggressor Self–Defense Cases: Ensuring Equity within*

*the Adjutant Framework,* 40 Suffolk U.L.Rev. 237, 238–42 (2006) ("Scott") (federal rules of evidence permit only general reputation or opinion testimony because probative value of specific act evidence outweighed by undue prejudice of such evidence, but noting that common law states have taken varying approaches to the issue).

¶ 23 The Arizona Rules of Evidence undercut the rationale of *Mendez* and its progeny to the extent those cases leave it to the sound discretion of the trial court whether to admit prior acts of violence of the victim unknown by the defendant at the time of the incident except as permitted by Rule 405(b).

¶ 24 This, however, does not end our inquiry. We must now determine whether the superior court properly applied Rules 403 through 405, or related rules of evidence, in precluding the specific act evidence and, if there was error, whether such error was harmless. We analyze this issue by addressing each of Defendant's proffered reasons why the specific act evidence should have been admitted.

### 1. Initial Aggressor

¶ 25 Defendant argues that evidence unknown to him at the time of the shooting of the Victim's specific prior acts of violence and aggression should have been admitted to show the Victim was the probable first aggressor under Rule 402(a)(2). While we agree that evidence as to the Victim's character would have been admissible to establish the aggressor without knowledge of specific acts by the Defendant, that evidence had to be limited to the Victim's general reputation under Rule 405 because this is not an essential element of the defense.

¶ 26 When offered to show that the victim was the probable first aggressor, evidence of the victim's violent or aggressive character is offered to prove conduct in conformity with that character. *Adams, supra* at 405–06; *Commonwealth v. Adjutant,* 443 Mass. 649, 824 N.E.2d 1, 6 (2005). Such evidence encourages the factfinder to infer aggressive conduct by the victim in conformity with the victim's aggressive character. *Adams, supra* at 405–06. In turn, "the inference that a victim's conduct conformed to character

traits for violence, aggression, or quarrelsomeness may make more probable the defendant's claims that the victim was the first aggressor." *Id.*

¶ 27 Consequently, since this evidence is offered to prove an objective fact (that the Victim was the first aggressor), not the defendant's subjective state of mind, whether the Defendant knew of the Victim's character is irrelevant. *Adams, supra* at 410. Accord *Keiser,* 57 F.3d at 857 (personal knowledge of victim's violent character not necessary to prove that victim may have been using unlawful force); 1A John Henry Wigmore, *Evidence in Trials at Common Law* § 63 at 1350, 1369 (Tillers rev. 1983) ("Wigmore"); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.11[3][a] at 29–30. (Joseph M. McLaughlin ed., 2d ed. 2009) ("Weinstein") (stating rule under Federal Rules of Evidence but noting that common law refused to permit proof of general reputation unless defendant knew of the victim's violent character); Mary Kay Kleiss, *A New Understanding of Specific Act Evidence in Homicide Cases Where the Accused Claims Self–Defense: Striking the Proper Balance Between Competing Policy Goals,* 32 Ind. L.Rev. 1437, 1439–40 (1999) ("Kleiss"). Admissibility of such a character trait without prior knowledge by the Defendant is consistent with the modern trend of cases and is supported by all federal courts of appeals and forty-five state courts. *Adjutant,* 824 N.E.2d at 6–7 & nn. 7–10 (collecting cases). The reasoning for such a trend is sound—"evidence reflecting the victim's propensity for violence has substantial probative value and will help the jury identify the first aggressor when the circumstances of the altercation are in dispute." *Id.* at 8.

¶ 28 While evidence of the Victim's character unknown to the Defendant at the time of the shooting may be admissible to prove the Victim was the aggressor, Rules 404(a)(2) and 405 limit the evidence to general reputation evidence, permitting specific act evidence only when the character of the victim is an essential element of the defense or on cross-examination. *Keiser,* 57 F.3d at 857; *Adams, supra* at 411–14; *Weinstein* § 404.12 at 34–34.1. *Cf. Wigmore* § 63.1 (specific acts

inadmissible to show character unless acts are independently admissible to show some other fact).

¶ 29 In Arizona, a victim's character is not an essential element of self-defense. *Williams,* 141 Ariz. at 129, 685 P.2d at 766 (applying *Lehman's* analysis to evidence of specific instances of conduct by a victim and holding that Rule 405 prohibited admission of the evidence when the victim's character was not essential to the defense claimed). *See also Santanna,* 153 Ariz. at 149, 735 P.2d at 759 (victim's character not an essential element of defense; but opinion unclear whether this was because defendant was no longer claiming self-defense). That a victim's character is not an essential element also appears to be the general view and is consistent with interpretation of the analogous Federal Rule of Evidence, upon which Arizona Rule of Evidence 405 is based. *Adams, supra* at 413 and n. 54 (majority view); 2 Weinstein ß405.05[4], at 41–45. (character of victim is not essential element for self-defense); *Lehman,* 126 Ariz. at 391, 616 P.2d at 66 (federal rule is analogous to the state rule and using The Advisory Committee's Notes to the federal rules to interpret the state rule). *Cf. Adjutant,* 824 N.E.2d at 11 & n. 15 (noting that federal courts only permit general reputation evidence to prove first aggressor claim and that state courts are split on whether victim's character is essential element of defense). As explained in *State v. Jenewicz,* 193 N.J. 440, 940 A.2d 269, 281 (2008), an essential element extends only to elements a party must prove "to make out a prima facie case for a claim or defense. An accused can assert self-defense successfully without offering any evidence regarding a victim's character. Therefore, character evidence cannot be regarded as 'essential'."

¶ 30 Courts and commentators widely interpret the analogous Federal Rules of Evidence as prohibiting defendants from introducing specific act evidence to show that the victim of a crime was the initial aggressor.

Thus, in *Keiser,* 57 F.3d at 857, the court asked if "proof, or failure of proof, of the character trait by itself [would] actually satisfy an element of the charge, claim, or defense?" *Id.* at 856. In concluding that the victim's character was not an essential element of the defendant's self-defense claim, the court noted that even if the defendant proved the victim's violent nature, the jury would still need to decide whether the victim was using or about to use unlawful force. It would also have to decide whether the force the victim was using was likely to cause death or great bodily harm, the defendant reasonably believed force was necessary, and the defendant used no more force than appeared reasonably necessary. *Id.* at 857.[7] *See also United States v. Gulley,* 526 F.3d 809, 817–19 (5th Cir.2008) (victim's character was "not an essential element of the self defense claim in the 'strict sense' because a self defense claim may be proven regardless of whether the victim has a violent or passive character"); *United States v. Gregg,* 451 F.3d 930, 933–34 (8th Cir.2006) (Rule 405 allows proof of character only by reputation or opinion because "a victim's violent character is not an essential element of . . . the defense of self-defense"); *United States v. Smith,* 230 F.3d 300, 307–08 (7th Cir.2000) (Fed.R.Evid. 405 prohibits evidence of unknown specific violent acts since the victim's violent character is not an essential element of self-defense); *United States v. Bautista,* 145 F.3d 1140, 1152 (10th Cir.1998) (evidence of specific instances of victim's conduct was properly excluded under Fed.R.Evid. 405 because victim's character is merely circumstantial evidence, not essential element of self-defense).

¶ 31 Similarly, most states with evidentiary rules similar to the Federal Rules of Evidence permit the defendant to introduce reputation and opinion evidence, but not specific acts of violence, to prove the victim's violent character. *See Adjutant,* 824 N.E.2d at 11 n. 15. Jurisdictions that have not adopted the Federal Rules of Evidence are split on the issue, however. *Id.; Scott, supra* at 244. On

---

7. The Ninth Circuit's analysis as to an essential element is not the same as that used in Arizona. In Arizona the relevant inquiry in determining whether a character trait is an essential element is whether the trait is an "operative fact which under substantive law determines the rights and liabilities of the parties." *Lehman,* 126 Ariz. at 391, 616 P.2d at 66 (citation omitted).

appeal, Defendant refers to a number of cases from other jurisdictions in urging this Court to adopt what he calls "the modern test" for admissibility of other act evidence: that a trial court has discretion to admit evidence of a victim's prior acts unknown to the Defendant to show self-defense when the identity of the initial aggressor is in dispute. *See, e.g., Adjutant,* 824 N.E.2d at 11–13; *Chandler v. State,* 261 Ga. 402, 405 S.E.2d 669, 673 (1991); *People v. Lynch,* 104 Ill.2d 194, 83 Ill.Dec. 598, 470 N.E.2d 1018, 1020–21 (1984); *People v. Mizchele,* 142 Cal.App.3d 686, 690–91, 191 Cal.Rptr. 245 (1983); *People v. Wright,* 39 Cal.3d 576, 583, 217 Cal.Rptr. 212, 703 P.2d 1106 (1985); *State v. Smith,* 222 Conn. 1, 608 A.2d 63, 72 (1992).[8]

¶ 32 Contrary to Defendant's assertions, we see no "trend" in admitting previously unknown specific act evidence in self-defense cases as proof of who was the first aggressor. The court in *Adjutant* acknowledged that Rules 404 and 405 of the Federal Rules of Evidence prohibit the use of specific acts of violence to prove a victim's violent character under a first aggressor theory, and that most states with similar rules interpret them accordingly. *Adjutant,* 824 N.E.2d at 11 n. 15 (recognizing that the "dominant interpretation" of Fed.R.Evid. 404 and 405 prohibits specific act evidence to prove character). *See also Scott, supra* at 244 (noting that some states have held that character evidence is essential element of self-defense, with some states requiring contemporaneous knowledge of prior violent acts and others not requiring such knowledge). Rather, the cases upon which Defendant relies, including *Adjutant,* come primarily from jurisdictions which have not adopted the Federal Rules of Evidence. *See 6 Weinstein,* Table, at 1–8 (noting that Massachusetts, Georgia, Illinois, and California have not adopted the federal rules). While two states with rules similar to our Rules 404(a) and 405 have interpreted

them to permit a court to admit specific act evidence of the victim, neither of them discussed the essential element issue. *State v. Dunson,* 433 N.W.2d 676, 680–81 (Iowa 1988) *State v. Baca,* 114 N.M. 668, 845 P.2d 762, 765–67 (1992).[9] Indeed, several of the other states have statutes or rules which expressly allow specific act evidence to show the character of the victim of a crime and to prove action in conformity with that character. *See, e.g., Wright,* 217 Cal.Rptr. 212, 703 P.2d at 1113. Rule 405, by contrast, is taken directly from the federal rule which, as discussed above, is generally construed as permitting a defendant to prove a victim's character in this context exclusively by reputation and opinion evidence.

¶ 33 While Iowa and New Mexico have interpreted their rules to give the trial court discretion to admit specific act evidence of the victim, despite the essential element requirement, those decisions have been criticized on the ground that treating character as an essential element allowable by Rule 405(b) eliminates the need for Rule 405(a). *See Adams, supra* at 416; *see also Scott, supra* at 259; *Jenewicz,* 940 A.2d at 281. This criticism seems well-taken. The purpose of Rule 405(a) is to limit character evidence admissible under Rule 404(a) to opinion and reputation testimony, except in the limited situations covered by Rule 405(b). *Id.* If character is considered an essential element of self-defense, however, proof of the victim's character is no longer limited by Rule 405(a) in self-defense claims. *Id.* The Advisory Committee's Notes to the federal rule explain why evidence of specific conduct must be limited:

> Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to

---

**8.** Several other cases to which Defendant cites discuss the admissibility of character evidence to prove the victim was the initial aggressor, but ultimately conclude that such evidence is admissible in the form of general reputation or opinion testimony. *See State v. Mitchell,* 214 W.Va. 516, 590 S.E.2d 709, 716 (2003) (evidence of a violent disposition is admissible to prove that a person was the aggressor in an affray); *see also State v. Marsh,* 71 Ohio App.3d 64, 593 N.E.2d 35, 39

(1990) (evidence of victim's propensity for violence when intoxicated was admissible to show that he was the initial aggressor).

**9.** The court in *Baca,* however, affirmed the conviction, holding the error was not prejudicial because other general reputation and specific act evidence had been admitted. 845 P.2d at 767.

confuse, to surprise, and to consume time. Consequently the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially.and hence occupies a lesser status in the case, proof may be only by reputation and opinion.

Accordingly, an interpretation of Rule 405(b) that greatly lessens the scope of Rule 405(a) would be imprudent.

¶ 34 We recognize that evidence of specific violent acts of a victim can be very persuasive and in some cases even a more reliable indicator of whether a victim was the first aggressor than general reputation or opinion evidence. *Adjutant*, 824 N.E.2d at 12–14. This could be especially true here when most of the alleged prior acts involved the Victim's reaction to confrontations about his dogs. However, rules :limiting .the admissibility of specific act evidence to prove a victim's character for violence serve a variety of policy functions. For instance, they protect victims who may have committed a single, wholly uncharacteristic violent act, prevent potential jury distraction from the main issues of a case, and promote judicial efficiency. *Kleiss, supra* at 1447–48; *see also Mendez*, 27 Ariz. at 84–85, 229 P. at 1033 (explaining that if "particular instances be allowed to be shown it would lead to the mischief of raising any number of collateral issues, the trial of which might be almost interminable, and otherwise objectionable, as diverting the mind of the jury from the main issue") (internal quotation marks omitted); *Adjutant*, 824 N.E.2d at 14 (reputation evidence is filtered and more general, thus posing less potential to inflame or sidetrack proceedings). Additionally, the rules protect victims with violent pasts from unfair prejudice. *See Adams, supra* at 416; *Adjutant*, 824 N.E.2d at 17–18 (Cowin. J., dissenting); *see also Taylor*, 169 Ariz. at 125, 817 P.2d at 492 (noting the "danger of unfair prejudice" posed by specific act evidence).

■ ¶ 35 In Arizona, as well as the majority of jurisdictions with similar evidentiary rules, a defendant may not introduce evidence of specific acts unknown to the defendant at the time of the alleged crime to show that the victim was the initial aggressor. While there are strong policy arguments supporting that rule and strong arguments for giving trial court judges greater discretion in permitting such evidence, *Adjutant*, 824 N.E.2d at 13, those arguments are best made to the Arizona Supreme Court as to whether to amend the rules of evidence. Accordingly, the superior court properly excluded the specific act evidence for the purpose of showing the Victim was the initial aggressor under Rule 404(a)(2).

### 2. Defendant's Reasonable Belief

■ ¶ 36 Defendant argues that evidence of the Victim's prior violent or aggressive acts should have been admitted to show the reasonableness of Defendant's belief that he was in imminent danger of death or serious injury. Recent case law from Arizona, as well as the vast majority of other jurisdictions, indicates that specific act evidence is not admissible to show a defendant's state of mind unless the defendant was aware of the victim's prior acts at the time of the altercation. Commentators widely agree with this statement of the law. For these reasons we conclude that the superior court properly excluded the specific act evidence for the purpose of showing Defendant's state of mind and the reasonableness of his response under Rule 404(a)(2).

■ ¶ 37 When offered to prove a defendant reasonably feared for his safety and used a reasonable degree of force in light of that fear, character evidence is not propensity evidence; rather, it is offered to prove the defendant's state of mind and the reasonableness of his actions. Adams, *supra* at 406, 419–20; *Brand v. State*, 766 N.E.2d 772, 779–80 (Ind.App.2002). As noted above, however, this Court has twice held that evidence of specific violent acts by the Victim is not admissible to prove a defendant's state of mind and reasonableness unless the defendant claiming self-defense knew of the specific acts prior to the incident in question. *See Connor*, 215 Ariz. at 559, ¶ 15, 161 P.3d at 602; *Williams*, 141 Ariz. at 130, 685 P.2d at 767. This is consistent with prior Arizona Supreme Court rulings to the same effect.

*Santanna,* 153 Ariz. at 149, 735 P.2d at 759 (dicta); *Young,* 109 Ariz. at 223, 508 P.2d at 53; *Jackson,* 94 Ariz. at 121, 382 P.2d at 231; *State v. Wallace,* 83 Ariz. 220, 224, 319 P.2d 529, 531 (1957). This knowledge requirement is consistent with conclusions of commentators and decisions in other jurisdictions. *See Adams, supra* at 418–19; *Kleiss, supra* at 1439; 1A Wigmore § 63; R.P. Davis, Annotation, *Admissibility on issue of self-defense (or defense of another), on prosecution for homicide or assault, of evidence of specific acts of violence by deceased, or person assaulted, against others than defendant,* 121 A.L.R. 380, Part IVa (1939 and 2008 Supp.); *Jenewicz,* 940 A.2d at 282; *Adjutant,* 824 N.E.2d at 6.

¶ 38 Indeed, this conclusion makes common sense. If the Defendant did not know of the Victim's prior violent acts at the time in question, those prior acts could not bear on whether Defendant was reasonably in fear of his life so as to justify Defendant's use of deadly force. Only acts of the Victim known by the Defendant at the time of the incident could be in Defendant's mind.

¶ 39 Defendant identifies a single case which strays from this general rule that specific acts unknown to the defendant are inadmissible. *See Chandler,* 405 S.E.2d at 673. *Chandler,* however, relies exclusively on a special concurrence in *Lolley v. State,* 259 Ga. 605, 385 S.E.2d 285, 287–89 (1989), which explained that the prior acts were relevant not to show the defendant's state of mind, but to show that that the victim acted violently on a particular occasion and thus was likely to act in accordance with his prior disposition. *Id.* at 288 (citing Green, Georgia Law of Evidence, § 65, at 160).

¶ 40 We conclude that the superior court properly excluded the specific act evidence for the purpose of showing Defendant's state of mind and the reasonableness of his response. Defendant admits he was not aware of such acts at the time of the shooting and Rule 404(b) prohibits use of such evidence for that purpose.

### 3. Defendant's Credibility

¶ 41 Defendant argues that specific act evidence showing the Victim was violent and aggressive was admissible under Rule 404(b) to prove that the Victim intended to harm and had a motive to attack Defendant, to corroborate Defendant's version of the events leading up to the shooting, and because the State opened the door to that evidence when it claimed that the Victim was merely trying to retrieve his dogs. The superior court concluded that the specific evidence was irrelevant for that purpose, but that general reputation or opinion evidence was admissible to corroborate Defendant's description of the events and who was the initial aggressor. On a motion for reconsideration, the court added that the specific act evidence also would be precluded under Rule 403. On this record, in which the single determinative issue was whether the Defendant's claim of self-defense was critical and there were no other eyewitnesses to the shooting, we disagree with the court and hold that the specific act evidence was relevant to corroborating Defendant's version of the events leading up to the shooting. Because we cannot determine if the court conducted an appropriate Rule 403 balancing test, on remand if this evidence is again offered, the court should again balance the evidence under Rule 403 to determine whether it should be admitted to corroborate the Defendant's statement of the events leading up to the shooting.

¶ 42 Rule 404(b) provides in pertinent part, that except for sexual misconduct cases, "evidence of other crimes, wrongs, or acts" is not admissible to prove the character of a person to show action in conformity with that character, but "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent . . .". The list of reasons is not exclusive. *State v. Jeffers,* 135 Ariz. 404, 417, 661 P.2d 1105, 1118 (1983) ("The list of 'other purposes' in rule 404(b), for which other crime may be shown, is not exclusive; if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible. . . ."). And the form of such evidence is not limited by Rule 405. *Adams, supra* at 420. Defendant correctly notes the importance of admitting evidence which could "throw light on the question of aggression, or

upon the conduct or motives of the parties at the time of the affray ...." *Mendez*, 27 Ariz. at 86, 229 P. at 1033 (citing 2 Wigmore, *Evidence* § 248). While most cases address the admissibility of specific act evidence to show motive, opportunity, intent, and preparation on the part of the defendant, the rule also applies to prior acts of alleged victims or third parties. *Connor*, 215 Ariz. at 563, ¶¶ 32–33, 161 P.3d at 606 (prior burglary of victim's home to show victim's state of mind in relationship with defendant not true other-act evidence, but analyzed under Rule 404(b)); *State v. Tankersley*, 191 Ariz. 359, 369, ¶ 39, 956 P.2d 486, 496 (1998) (rule applicable to acts of third parties).

¶ 43 To determine whether specific prior act evidence is admissible under Rule 404(b), a court must first determine whether the evidence is clear and convincing as to the conduct and that the person alleged to have committed it did so, although ultimately those facts are left to the jury to decide if the evidence is admitted. *Anthony*, 218 Ariz. at 444, ¶ 33, 189 P.3d at 371. In addition, a trial court must also determine whether the evidence: (1) Is offered for a proper purpose under Rule 404(b); (2) Is relevant to prove that stated purpose; and (3) Has sufficient probative value as not to be substantially outweighed by undue prejudice under Rule 403. *Id.* If the evidence is then admitted, the court should instruct the jury on the limited purpose for which it is being admitted. *Id. Accord State v. Coghill*, 216 Ariz. 578, 582, ¶ 13, 169 P.3d 942, 946 (App. 2007). The evidence is not admissible if it is used to show the person's propensity to act

in conformity with his or her character. *Id.* at 584, ¶ 24, 169 P.3d at 948; *Connor*, 215 Ariz. at 563, ¶ 32, 161 P.3d at 606. If the trial court errs in applying the wrong test as to admissibility and the ultimate facts as to the prior acts are not in dispute, an issue of law is presented and we will reverse absent harmless error. *Anthony*, 218 Ariz. at 444–45 n. 6 and ¶¶ 34–35, 189 P.3d at 371–72 n. 6.

¶ 44 Each of the first three factors was met here. First, the State did not dispute that the Victim committed the confrontational, aggressive and purportedly violent acts to which the witnesses proffered by the Defendant would have testified.

¶ 45 Second, if the evidence was not offered to show the Victim's character to prove disposition to acts of a particular type, it could be admissible under Rule 404(b) to show the Victim's motive or intent or to corroborate Defendant's version of the events. *Connor*, 215 Ariz. at 563, ¶ 32, 161 P.3d at 606 (citations omitted); *Gorman v. State*, 619 N.W.2d 802, 806–07 (Minn.App. 2000). While the evidence was arguably offered in part to show the Victim's motive and intent to attack the Defendant, this stated purpose necessarily relates to the Defendant's state of mind and as such, to be admissible the Defendant must have known of the prior specific conduct. *See, e.g., Gregg*, 451 F.3d at 935 (victim's prior bad acts as they related to self-defense claim are not admissible under Fed. R. of Evid. 404(b) unless the defendant knew of those acts prior to the charged crime because the evidence related to Defendant's state of mind in defending himself).[10]

---

10. We do not find *Connor* or *Taylor* helpful in this regard. While the court in *Connor* held the defendant's prior bad acts admissible to rebut the defendant's claim he was welcome in the victim's apartment, the victim was aware of those bad acts and thus the evidence went to the victim's state of mind to rebut defendant's argument the victim was still friendly with the defendant. *Connor*, 215 Ariz. at 563–64, ¶¶ 33–38, 161 P.3d at 606–07. In *Taylor*, the defendant sought to introduce the victim's prior conviction for child abuse both to show the propensity of the victim for violence and the defendant's state of mind believing the victim to be violent. 169 Ariz. at 124, 817 P.2d at 491. The court first held that to show the defendant was justifiably afraid of the decedent, he had to know that the

decedent had a violent disposition and found the conviction was admissible, apparently because the defendant knew of that conviction. *Id.* at 124, 817 P.2d at 491. The court then went on to discuss Rule 404(b) and noted that the evidence would also be admissible under that rule because it was relevant to defendant's state of mind. *Id.* at 124–25, 817 P.2d at 491–92.

Nor do we find *State v. Ives*, 187 Ariz. 102, 110–11, 927 P.2d 762, 770–71 (1996) and *State v. Torres*, 162 Ariz. 70, 72–73, 781 P.2d 47, 49–50 (App.1989) helpful. In both of those cases, the defendants denied having committed the acts charged and the state attempted to introduce evidence of prior alleged crimes purportedly to show motive or intent. In both cases, the appellate courts held the evidence was inadmissible

¶ 46 However, just as the superior court concluded the general reputation evidence about Victim's propensity to violence was relevant to corroborate the Defendant's description of what he faced just prior to the shooting, the specific act evidence was similarly relevant to rebut the State's argument that Defendant fabricated or exaggerated the Victim's acts on the date of the shooting. Accordingly, we hold such specific act evidence would have been admissible subject to Rule 403 balancing. In *Gorman,* the defendant was convicted of murdering the victim. His defense was that he acted in self-defense because he believed the victim, who had boasted he had just spent eighteen years in prison for a double murder, was threatening the defendant with what the defendant thought was a weapon. 619 N.W.2d at 804. In a petition for postconviction relief based on newly discovered evidence not disclosed by the state, the defendant presented evidence that the state had known of the victim's true identity and prior murder convictions. The defendant argued if that evidence had been disclosed and introduced at trial, it would have enhanced the defendant's testimony about self-defense and rebutted the state's argument that the defendant's story was fabricated. 619 N.W.2d at 804–05. In ordering that the trial court should have granted the defendant an evidentiary hearing on this issue, the appellate court held that the evidence about the victim's prior murders and convictions would have been admissible to bolster the defendant's credibility as to what the victim had said to him and would have helped to rebut the state's argument the appellant had fabricated that part of his story. 619 N.W.2d at 806–07.

¶ 47 The defendant in *Gorman* did not know of the victim's prior bad acts. While the defendant claimed the victim had told him of the prior bad acts, he did not know they had actually occurred, and admission of the actual facts concerning the prior acts would have boosted the defendant's credibility about what the alleged victim had told him and rebutted the state's argument the alleged statement by the victim had never occurred. Similarly here, Defendant's grand jury testimony and statements to police were that he knew or thought he was being attacked and would be killed or seriously injured. Thus, he certainly knew of these alleged acts. He did not know of the prior bad acts of the Victim in this type of confrontation, but the evidence of such aggressiveness by the Victim under similar circumstances would have boosted the credibility of Defendant's description of what occurred prior to the shooting.

¶ 48 Third, given the broad definition of relevancy and the record in this case, we cannot agree with the superior court summarily rejecting the argument that the evidence was relevant to corroborate the Defendant's description of the events leading up to the shooting. Evidence relevant for any purpose other than showing propensities to act in a certain way is admissible. *Id.;* Rule 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The standard of relevance is not particularly high. *Taylor,* 169 Ariz. at 124 n. 3, 817 P.2d at 491 n. 3. The State argued Defendant did not act in self-defense because his assertions that the Victim had charged at him to attack or kill him could not be believed, and it was more likely that the Victim was merely trying to control his dogs. The Victim's motive or intent in allegedly charging Defendant certainly was relevant to rebut the evidence the State introduced attacking the veracity of Defendant's description of what occurred.[11]

because nothing in the evidence related to motive, knowledge, intent, and absence of mistake or accident but was really aimed to show that because the defendant had once committed a similar act, he must have also committed the crime charged. While the court in *Ives* made a passing reference to the issue of credibility, 187 Ariz. at 111, 927 P.2d at 771, that was not the basis for the offered evidence. In any event, in this case the court could avoid any use of the evidence for a prohibited purpose by a limiting instruction. *Anthony,* 218 Ariz. at 444, ¶ 33, 189 P.3d at 371.

11. The State's arguments to the jury about Defendant's credibility on how the Victim acted prior to his being shot also opened the door to introduction of prior act evidence to show Victim's state of mind and the exact alleged threat

¶ 49 This does not mean that in any self-defense claim prior acts of a victim unknown to the defendant at the time of the alleged crime are always admissible to corroborate the defendant's claim. We conclude such evidence may have been admissible for corroboration in this case because of the nature of the record. Defendant conceded that he shot the Victim and gave specific facts to police, the grand jury and witnesses of the events leading up to the shooting. His description of the Victim's conduct given immediately after the shooting is very similar to proffered evidence of prior acts of the Victim of which Defendant did not know when he made those statements. There was no other witness to the shooting who could testify. The State contested the credibility of the Defendant's statements about the events leading up to the shooting, contending that the Victim probably was only trying to collect the dogs. On this record those prior acts were highly relevant to the credibility of the self-defense claim.

¶ 50 While the specific act evidence was relevant to corroborate Defendant's description of the events leading to the shooting, we also must determine if the superior court erred in balancing the probative value of the specific act evidence against any undue prejudice and confusion under Rule 403 and whether any error was harmless. We cannot agree that the court appropriately balanced the probative value of the evidence against any undue prejudice. After Defendant pointed out to the court that it had failed to address his argument under Rule 404(b), the court stated that the arguments were meritless, the evidence not relevant to the issue of motive and its admission was barred by Rule 403 because its unfair prejudice would substantially outweigh its slight probative value and "would lead to confusion, speculation and undue delay."

¶ 51 Normally, we give the trial court broad discretion in undertaking a Rule 403 analysis especially when it has admitted the evidence. *Connor*, 215 Ariz. at 564, ¶ 39, 161

P.3d at 607. This should be especially true in the Rule 404(b) context because of the effect evidence of the prior specific acts might have on a jury. *Anthony*, 218 Ariz. at 445 n. 8, 189 P.3d at 372 n. 8.

¶ 52 Here, however, that balancing was skewed by several factors. First, the superior court assumed the specific act evidence was not even relevant and as a result, summarily concluded that it would have little probative value even though the key issue of self-defense turned upon the credibility of Defendant's description of the event because he was the only living human witness to the shooting. Thus, the court appeared to weigh low probative value when the evidence was highly probative as to the accuracy and veracity of Defendant's statements and grand jury testimony about what occurred. Second, the court did not discuss why it concluded any undue prejudice and possible confusion outweighed the probative value. *Taylor*, 169 Ariz. at 125–26, 817 P.2d at 492–93 (remanding issue to the superior court to have it do an on-the-record weighing based on specific facts and circumstances regarding the balancing test). Indeed, we note that any such confusion and delay may have been extremely limited in this case because the State never contested the proffered witnesses' affidavits about the Victim's conduct when it related to confrontations about dogs. This concern is underscored by our discussion below concerning the nature of the excluded testimony given the sanitized evidence admitted on the Victim's reputation. Third, there is no indication that the confusion and delay the court envisioned could not have been solved by limitations on the amount of testimony which would have been admitted about the specific prior acts and that any confusion would have been remedied by an appropriate limiting jury instruction. Moreover, the risk of a jury using the evidence for an improper purpose is minimized by the requirement that a limiting instruction be given. *Anthony*, 218 Ariz. at 444, ¶ 33, 189·

Defendant may have been facing. *State v. Hyde*, 186 Ariz. 252, 276, 921 P.2d 655, 679 (1996) (specific prior act evidence admissible to rebut defendant's claim of lack of motive); *Connor*,

215 Ariz. at 563, ¶ 35, 161 P.3d at 606 (defense counsel's own questioning of witness opened door to permit State to expound on prior bad acts).

P.3d at 371.[12]

¶ 53 Assuming evidence of Victim's specific prior acts is again offered on remand for this purpose, the superior court will need to decide whether the evidence should be admitted by performing an appropriate weighing under Rule 403. This evidence is highly probative of the veracity of Defendant's description of what he faced on the day of the shooting. In contrast, the evidence which was admitted was highly sanitized with none of the admitted testimony reflecting how aggressive or violent the Victim had become when he was confronted about being at a location with his dogs. The affidavits of most of these witnesses described exactly what Defendant had described to police about the Victim's behavior—that he was irrationally aggressive and violent and extremely frightening. If some of those witnesses had testified, the jury would also have heard that the Victim, when upset, got a "wild look" in his eye and "flail[ed] his arms in aggressive manner," similar to what Defendant told police and was recounted to the jury as to the shooting. Instead, the jury only heard testimony that the witnesses thought the Victim had a reputation for violence and aggression, that some of the witnesses were frightened by him and in several cases undescribed incidents had occurred with his dog. The accuracy and veracity of Defendant's description as to the Victim's charging at him despite the Defendant being armed, flailing his arms and fists at the Defendant and threatening to hurt the Defendant was crucial to the justification defense.[13]

¶ 54 For the reasons stated above, evidence of specific acts of violence by the Victim when confronted about his dogs is relevant to corroborate Defendant's description of the events leading up to the shooting even though Defendant was unaware of those acts. The superior court should conduct an appropriate Rule 403 balancing test in light of the factors we address in this opinion.

## II. Self–Defense Instruction on Unlawful Physical Force

¶ 55 Defendant also argues the superior court should have given the jury his requested instructions that for purposes of self-defense, the term "unlawful physical force" includes the statutory elements of the crimes of endangerment, threatening or intimidating, and aggravated assault. *See* A.R.S. §§ 13–1201(A) (2001), 13–1202(A)(1) (Supp.2008), 13–1203(A)(1)–(2) (2001), 13–1204(A)(2) (Supp.2008). Defendant requested these instructions "to demonstrate the misconduct of [the Victim] and provide the jury with some guidance as to whether his misconduct was criminal." As Defendant explained to the court, these instructions would allow

the jury to appreciate that the nature and extent to which [the Victim's] behavior was unlawful, as defined … Rather than require the jury to speculate as to whether [the Victim's] behavior was wrongful and/or unlawful, these instructions spell out to the jury what the law is or isn't, and let the jury determine that issue with some structure as opposed to some of the free-wheeling and trying to figure it out on their own…. And we believe it is relevant to do that in order to assist the jury with—with the analysis that is necessary for a reasonable person under the self-defense statute.

¶ 56 The superior court refused to give the instructions, finding the reference to unlaw-

---

12. *Cf. Coghill,* 216 Ariz. at 582, 585–86 n. 7 and ¶¶ 13 and 31, 169 P.3d at 946, 949–50 n. 7 (noting requirement for limiting instruction but stating that when instruction was not given jury could have used prior act evidence for improper purpose). We presume juries follow the court's instructions. *State v. Morris,* 215 Ariz. 324, 336–37, ¶ 55, 160 P.3d 203, 215–16 (2007). *Cf. Anthony,* 218 Ariz. at 446, ¶ 40, 189 P.3d at 373 (studies show that introduction of prior bad acts can tip the balance against a party and may influence the jury on issues other than those on which it was received despite cautionary instructions).

13. We limit this discussion to proffered evidence of Defendant's prior irrational conduct relating to his being confronted about dogs. Proffered evidence relating to the Victim's violent nature toward the Victim's ex-girlfriend and her son and a neighbor and evidence of his violent attitude in a traffic accident were unrelated to his dog. This does not preclude the superior court from revisiting the admission of that evidence on remand.

ful physical force in the self-defense instruction to be sufficient. Thus, the jury instructions read in relevant part "[a] defendant is justified in using or threatening physical force in self-defense if . . . [a] reasonable person in the defendant's situation would have believed that physical force was immediately necessary to protect against another's use or attempted use of unlawful physical force" and " 'Unlawful' means contrary to law or . . . not permitted by law."

¶ 57 The issue of whether the reference to unlawful physical force in the given jury instructions adequately sets forth the law of self-defense appears to be one of first impression in Arizona. If the jury was not properly instructed on the applicable law, and Defendant's argument that the Victim committed the crimes of endangerment, threatening or intimidating, and aggravated assault was reasonably supported by evidence, then the superior court's refusal to provide additional instruction on the elements of the crimes was an abuse of discretion. We conclude for the following reasons that the superior court's failure to provide the additional instructions was reversible error.

¶ 58 Jury instructions should be given if there is any evidence to support the instruction. *E.g., State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995) ("A party is entitled to an instruction on any theory of the case reasonably supported by the evidence."); *State v. Shumway,* 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983) (same). However, the "court [is] not required to single out for special instruction the point made by defendant's requested instruction." *State v. Earby,* 136 Ariz. 246, 249, 665 P.2d 590, 593 (App.1983); *State v. Jessen,* 130 Ariz. 1, 9, 633 P.2d 410, 418 (1981) (when jury is correctly instructed on self-defense there is no error in court's refusal to "reiterate, enlarge or couch the law applicable in [defendant's] language") (citing *State v. Barker,* 94 Ariz. 383, 385 P.2d 516 (1963)).

¶ 59 This Court was previously faced with the issue of whether a superior court was required to expand the term "unlawful physical force" when instructing the jury on self-defense in *State v. Barraza,* 209 Ariz. 441, 446–47, ¶¶ 18–21, 104 P.3d 172, 177–79 (App. 2005). At trial, the defendant in *Barraza* argued that additional language should have been inserted into the self-defense instruction telling the jury that "forcible rape is deadly physical force". *Id.* at 446, ¶ 18, 104 P.3d at 177. The superior court declined to insert the additional language. *Id.* at 444, ¶ 7, 104 P.3d at 175. In appealing her conviction of second-degree murder, however, Barraza did not argue that the superior court's denial of this instruction was error. *Id.* at 447, ¶ 20, 104 P.3d at 178. Reviewing only for fundamental error, this Court noted that the superior court's instruction was "an otherwise correct instruction pursuant to [the relevant statutes] and its refusal to instruct the jury that a sexual assault constitutes the *per se* use of 'deadly force' did not deprive [the defendant] of a fair trial," and therefore declined to address the issue. *Id.* at ¶ 21. We also noted that the evidence did not support the defendant's claim that the victim sexually assaulted her. *Id.* at 447 n. 7, ¶ 21, 104 P.3d at 178 n. 7.

¶ 60 The dissent in *Barraza* stated that there was sufficient evidence to support the defendant's argument and as a result it was error not to give the requested jury instruction. *Id.* at 450–51, ¶¶ 37–38, 104 P.3d at 181–82 (Barker, J., dissenting). It asserted that the instructions given were inadequate without the additional language because they "provided the jury with the means of completely disregarding all of the self-defense evidence," which was the defendant's "entire case." *Id.* at 451, ¶ 40, 104 P.3d at 182. The dissent concluded by emphasizing the importance of erring on the side of granting requested jury instructions. stating, "in the face of clear legal error on the key point in the case, we should err on the side of allowing a jury to consider the evidence under the appropriate legal standard." *Id.* at 451–52, ¶ 43, 104 P.3d at 182–83.

¶ 61 While we have found no Arizona decision directly on point, courts of several other states have held that jury instructions should include a definition of the nature of the conduct which would justify self-defense or defense of property. In *Wiseman v. State,* 249 Ga. 559, 292 S.E.2d 670, 672 (1982), the court

held that it was error not to give instructions similar to the one at issue in this case. In *Wiseman,* the defendant claimed prevention of a forcible felony, rather than self-defense, as justification for homicide and requested an instruction to define forcible felony to include aggravated assault. The lower court denied the request, but the Supreme Court of Georgia reversed, stating that it was error not to include the elements of the specific felony for which there was evidence and upon which the justification was based. The court reasoned that the defendant used "the force necessary to prevent a forcible felony. This is one of the justifications for homicide. In order to intelligently consider this defense the jury must be informed as to what constitutes the forcible felony relied upon."

¶ 62 Other courts have reached similar conclusions. *See People v. Haag,* 127 Cal. App.2d 93, 100–01, 273 P.2d 328 (1954) (court should not have given instruction stating that " 'The right of self-defense exists only as against an imminent unlawful attack....' [because] [i]t did not define 'unlawful attack,' and it was not adequate to advise the jury as to circumstances which, under the evidence, would or would not constitute 'acting unlawfully' ", but finding error not reversible because of other instructions given); *State v. Crutcher,* 231 Iowa 418, 1 N.W.2d 195, 197–98 (1941) (objection to instruction that told jury defendant was entitled to defend self against assault when instruction did not include reference that self-defense applied to even a reasonable apprehension there is about to be assault). *See also Harrington v. State,* 858 So.2d 278, 303–04 (Ala.Crim.App. 2002) (no error in not instructing jury on battered woman syndrome in relation to self-defense because court instructed jury that a person may use whatever degree of force is necessary to defend self if she reasonably believes the other person is using or is about to use unlawful deadly force and court further defined those circumstances in which deadly physical forces is authorized and instructed jury on battered woman syndrome, telling jury that expert evidence on syndrome offered to assist jury in determining whether defendant reasonably believed she was in imminent danger).

¶ 63 The logic of the dissent in *Barraza,* and of the other cases addressing the need to define "unlawful" force persuades us that on this record, such an instruction should have been given. The only real issue at trial was self-defense. Defendant contends that he was acting in self-defense against unlawful physical force that put him in fear of death or serious physical injury. To consider this defense, at least on these facts, the jury should have been informed of the elements of the statutes that by Defendant's account rendered Victim's physical force unlawful.

¶ 64 Arizona cases such as *Earby* and *Jessen,* in which the court declined to "single out" a point for special jury instructions or to "enlarge" the law are not controlling here. *Earby,* 136 Ariz. at 249, 665 P.2d at 593; *Jessen,* 130 Ariz. at 9, 633 P.2d at 418. In *Earby,* for instance, the defendant requested the court to instruct the jury that the fact "[t]hat one is armed does not foreclose the right of self-defense if otherwise the defendant would have been entitled to the defense." 136 Ariz. at 249, 665 P.2d at 593. In *Jessen,* the defendant requested an instruction to the effect that he had no duty to retreat before using deadly force in self-defense. 130 Ariz. at 8, 633 P.2d at 417. These instructions are distinguishable from those Defendant requested here. The *Earby* and *Jessen* defendants selected favorable principles from the vast body of self-defense law and attempted to insert them into the standard instructions. Moreover, the requested instructions in essence explained that certain behaviors (carrying a gun and failing to retreat) were permissible when using self-defense. A jury would have no reason to believe that such behaviors foreclosed a self-defense claim unless instructed otherwise. Therefore, the instructions were unnecessary. Defendant, on the other hand, sought an instruction defining crimes which would have been helpful to the jury to determine an element of his defense. The requested instruction would have assisted the jury in interpreting an undefined term (unlawful physical force) to determine if Defendant's self-defense claim was valid.

¶ 65 The facts in this case are distinguishable from *Barraza,* in which the majority

declined to address the issue of whether the "deadly physical force" instruction should be expanded because the evidence did not support the claim that the defendant was acting in self-defense, but rather tended to show that she was "carrying out a preconceived plan to assault the victim." *Barraza,* 209 Ariz. at 447 n. 7, ¶ 21, 104 P.3d at 178 n. 7. Here, in addition to Defendant's statement that he shot at the Victim because he feared for his life, the following evidence supported his case: Defendant's statements to detectives and witnesses, and his grand jury testimony were generally consistent; the fact that Defendant contacted authorities after the shooting and cooperated throughout the investigation; evidence from the crime scene—including footprints and the Victim's wounds—corroborated Defendant's story that the Victim moved quickly from high ground, that the Victim's arms were raised, and that Defendant did not shoot until the Victim was very close; and the testimony of at least eight witnesses that the Victim frequently became violent and aggressive corroborated Defendant's account of the Victim's behavior. Thus, it is clear that there was evidence to support an instruction on endangerment, threatening or intimidation, and aggravated assault.

¶ 66 Furthermore, the instructions given were inadequate to state the law of self-defense for this case. With the exception of the instructions defining "unlawful" to mean "contrary to law" or "not permitted by law" and stating that Arizona law does not permit a vicious dog at-large, the jury instructions did not refer back to the term "unlawful physical force," except to state that a person can only use deadly force in self-defense to protect against another's use or threatened use of deadly physical force. By contrast, most other terms in the initial self-defense

instruction, including "reasonable person," "recklessly," and "preponderance of the evidence" were expanded in subsequent instructions. Without the additional instructions regarding endangerment, threatening or intimidation, and aggravated assault, the jury was left to speculate as to whether the Victim's behavior was unlawful. The jury could have concluded that the Victim's advances toward Defendant did not rise to the level of unlawful conduct, not realizing that the Victim could have committed an aggravated assault without ever making contact with the Defendant. Although we presume that the jury understood and followed the instructions, we cannot assume that the jury was aware of laws on which it was not instructed. On this record, the court erred in refusing Defendant's offered instruction.

¶ 67 Our concern is heightened by a question posed by the jury. During deliberation, the jury sent the judge a question about what the definition of an "attack" was. The instructions used the word "attack" twice, once saying that a vicious animal is a carnivore with a propensity to attack and once saying that a person has the right to defend himself against a human and a dog attack. The court, over the objection of the Defendant, answered the question by telling the jury that any legal definitions they needed had been given in the instructions. The instructions, of course, did not define the term "attack".[14] Whether the question referred to the dogs or the Victim's alleged attack on the Defendant, this uncertainty underscores the need for the jury to have understood that the Victim may have unlawfully attacked Defendant without physically touching him. Thus, the proposed instructions would have been helpful to the jury in understanding that Defendant might have been entitled to de-

---

**14.** Defendant suggested that the court answer the question by a dictionary definition of "attack." We do not find that the failure to again urge that the court instruct the jury on various crimes which the Victim's alleged conduct might have amounted to waived the issue of the instructions on appeal. The court had already made clear that it would not give the requested instructions about the Victim's conduct and while it might reconsider this issue, the discussion about the jury question did not raise this issue again.

*See Padilla v. So. Pac. Transp. Co.,* 131 Ariz. 533, 535, 642 P.2d 878, 880 (App.1982) (party does not waive objections by not repeating objections once it is clear court has refused request or overruled objection); *McGregor v. State,* 725 N.E.2d 840, 842 (Ind.2000) (defendant did not waive objection to jury instruction by raising objection earlier in trial, having objection overruled and not repeating objection prior to giving of final jury instructions).

fend himself with deadly force given the facts he presented to the jury.

¶ 68 We also hold that this error was not harmless. *See Anthony*, 218 Ariz. at 446, ¶ 39, 189 P.3d at 373 (state has burden to show harmless error, *i.e.*, that beyond a reasonable doubt the error did not contribute to or affect the verdict). The jury was entitled to consider the self-defense evidence in determining whether Defendant acted reasonably. In this case, the self-defense evidence was Defendant's entire case. The scenario discussed above—in which a jury not instructed on the definitions of assault and endangerment may have concluded there could not have been unlawful physical force because there was no contact—makes it clear that the missing instructions provided the jury "with the means of completely disregarding all of the self-defense evidence." *Barraza*, 209 Ariz. at 451, ¶ 40, 104 P.3d at 182. Because there was evidence supporting Defendant's self-defense claim and because the flawed jury instruction allowed the jury to disregard this evidence, we cannot say that the state met its burden to show harmless error.

### III. Instruction on the Dogs as Dangerous Instruments

¶ 69 Defendant argues that the superior court erred in refusing to instruct the jury that the Victim's dogs could be considered dangerous instruments and that they presented a threat of death or serious physical injury.[15] Defendant requested an instruction defining a "dangerous instrument." The State objected because there was no evidence the Victim had attempted to or did use the dogs to threaten Defendant. The superior court agreed with the State and denied the requested instruction.

¶ 70 We review a court's denial of a proposed jury instruction for abuse of discretion. *State v. Cox*, 217 Ariz. 353, 356,

¶ 15, 174 P.3d 265, 268 (2007). "A party is entitled to an instruction on any theory of the case reasonably supported by the evidence." *Bolton*, 182 Ariz. at 309, 896 P.2d at 849; *Shumway*, 137 Ariz. at 588, 672 P.2d at 932.

¶ 71 A.R.S. § 13–105 (Supp.2008) defines a dangerous instrument to mean "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." There are many cases holding that dogs may fall within this definition of "dangerous instrument" (or the statutory equivalent within the jurisdiction). Fern L. Kletter, *Dog as Deadly or Dangerous Weapon for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery*, 124 A.L.R. 5th 657, §§ 3–5 (2004). *E.g., People v. Kay*, 121 Mich.App. 438, 328 N.W.2d 424, 425 (1982) ("Where the relevant statute defining dangerous or offensive weapon *broadly includes any instrumentality so constructed or used as to be likely to produce death or serious bodily harm,* courts have extended the characterization offensive or dangerous weapon to include dogs used to attack or intimidate the victim.") (emphasis in original). While many of those cases deal with situations in which the defendant had affirmatively ordered the dogs to attack or used them to threaten a police officer or a victim, *e.g., State v. Sinks*, 168 Wis.2d 245, 483 N.W.2d 286 (Wis.App.1992), several courts have held that a party who knowingly allows the dogs to threaten or attack another by failing to keep them under control can be charged with an aggravated offense by using a dangerous or deadly weapon. *See, e.g., State v. Michels*, 726 So.2d 449, 453 (La.Ct. App.1999); *State v. Bodoh*, 226 Wis.2d 718, 595 N.W.2d 330, 334–35, ¶¶ 14–19 (1999); *Commonwealth v. Tarrant*, 367 Mass. 411, 326 N.E.2d 710, 714–15 (1975).

¶ 72 In *Michels*, the victim was unable to resist the defendant's sexual advances due in part to the presence of the defendant's dog.

---

15. Defendant also argues that the superior court should have instructed that the Victim had to take responsibility for the dogs being loose. However, he cites no authorities and makes no substantive argument on that issue. We thus decline to address it. *State v. Blodgette*, 121 Ariz. 392, 395, 590 P.2d 931, 934 (1979). On remand, Defendant can raise this argument again in light of our decision the court should have instructed the jury both as to unlawful acts and the dogs as dangerous instruments. However, we render no opinion on the need for an instruction dealing with the Victim having to be held responsible for the dogs.

726 So.2d at 453. The State successfully argued that a jury could find the presence of the dogs meant the defendant was armed with a dangerous weapon at the time of the encounter. *Michels*, 726 So.2d at 452–53. The court held "'the dangerousness of the instrumentality because of its use is a factual question for the jury.'" *Id.* at 453 (citing *State v. Munoz*, 575 So.2d 848, 850 (La.Ct. App.1999)). According to this standard, a person need not "use" a dog in the same manner as an inanimate object for the dog to be classified as a dangerous instrument or weapon for statutory purposes. Rather, if the victim was fearful of the dog and the dog was able to threaten or likely to attack, it was sufficient for the question of dangerous instrument to go to the jury.

¶ 73 Similarly, in *Tarrant*, the defendant unlawfully entered the victim's apartment with a large dog who freely roamed the apartment. After stealing property, the defendant asked if the victim had more property and warned him he would kill him if he lied. On appeal, the issue was whether the court should have instructed the jury the dog was a dangerous instrument. The court found the instruction was appropriate because the prosecution did not have to show the defendant acted intentionally or used the dog in a harm-inflicting manner. Rather, it applied an objective test whether a reasonable person would have perceived the dog as a threat and the defendant had used the dog to elicit fear. 326 N.E.2d at 714–15.

¶ 74 In *Bodoh*, the defendant was charged with negligent handling of a dangerous weapon when he had not properly restrained two large dogs who had chased down and seriously injured a young boy on a bike. The court held that it had to look to the manner in which the dogs were used and the nature of their activities to see if they were a dangerous weapon and then determine if the defendant had failed to train or control them. 595 N.W.2d at 334–35, ¶¶ 14–19. The court also held the defendant had handled the dogs even though he was not present at the attack because he was responsible for directing and controlling them and had known of prior attacks, but cautioned that to be guilty the

defendant must have intended to use them in such a manner. 595 N.W.2d at 336, ¶¶ 22–24.

¶ 75 We hold that a person can be responsible in a criminal setting for using a dog or a vicious animal as a dangerous instrumentality without expressly ordering the animal to attack if the party knows the dog had the ability to threaten or cause serious physical injury, knows the dog was presenting itself as such and the party failed to control or stop the dog from presenting such possible harm. Applying such an analysis here, the jury could have considered the two dogs dangerous instruments if they believed the Defendant that the dogs were charging at him, the Victim knew the dogs were charging Defendant, the Victim did nothing to restrain them and could have found that a reasonable person in Defendant's situation would have perceived a threat of serious physical harm or death from the dogs. Defendant testified to the grand jury the two dogs were "speeding" towards him "with teeth and growls and barking." He testified that he perceived the dogs were going to attack him and that the Victim was not going to restrain them. After firing a warning shot at the dogs, the Defendant did admit that he initially believed the Victim would get the dogs "under control" and no longer thought the dogs would bite him. However, Defendant also testified that the Victim did nothing to restrain the dogs and the testimony does not indicate that Defendant did not fear the dogs' ability to attack at the time he shot the Victim. To the contrary, he testified that the presence of the dogs prevented him from retreating from the Victim's advances, describing his thoughts at the time of the shooting as

> I can't go this way. There's a dog right there. I can't go over here because there's too much brush and there's a dog in there somewhere. I can't run uphill. [The Victim's] there. I can't run downhill. It's steep. There's a loose rock.... This guy's going—if I turn and run, the dogs will get me, he'll get me. I'll be dead. I'll be, you know, bitten by the dogs.

¶ 76 Defendant may have initially thought that the situation with the dogs was diffused, but when he saw the Victim charging at him

"breathing out threats and swinging," and realized the Victim was not coming to restrain the dogs, the presence of the dogs again may have become a threat. Accordingly, an instruction that the Victim's dogs could be considered dangerous instruments and that they may have presented a threat of death or serious physical injury would have been proper in light of the need for an instruction dealing with unlawful force by the Victim.

¶ 77 Because we reverse on other grounds, we do not determine whether the failure to define dangerous instruments and permit the jury to find whether the Victim had used the dogs as dangerous instruments was reversible error.[16] However, on remand, given the need for the court to instruct the jury about unlawful acts which might justify self-defense, the court should instruct the jury on the dogs as dangerous instrumentalities if the evidence at the new trial supports such an instruction.

## IV. Lesser–Included Offenses

■ ¶ 78 Defendant argues the superior court erred in failing to instruct the jury on the elements of the lesser-included offense of manslaughter. The State contends that the failure to give this instruction was invited error because the Defendant expressly told the court he did not want a manslaughter instruction because there was no evidence to support it. Defendant contends that since the court instructed the jury on reckless second degree murder, the court also should have instructed the jury on reckless manslaughter. Based on the record before us, however, we find no error in failing to give the instruction.

■ ¶ 79 We review a trial court's failure to give a lesser-included offense instruction for fundamental error when the instruction is not requested at trial and

would normally hold that it is fundamental error for the trial court to fail to give such an instruction if it is supported by the evidence and not waived by the defendant. *State v. Andriano*, 215 Ariz. 497, 504, ¶ 32, 161 P.3d 540, 547 (2007). We will not reverse a judgment on a ground which is allegedly erroneous, even if the error was fundamental, when the appellant invited that error. *State v. Logan*, 200 Ariz. 564, 565–66, ¶ 9, 30 P.3d 631, 632–33 (2001).

¶ 80 Here, Defendant expressly informed the superior court he did not want a lesser-included offense instruction on reckless manslaughter because he thought the evidence did not support such an instruction. For this reason, even if the failure to give the instruction was error, it was invited error and we will not reverse for that reason. *Id.* at 565–66, ¶ 9, 30 P.3d at 632–33.[17]

¶ 81 Defendant attempts to avoid the invited error doctrine by arguing that once the superior court instructed the jury on reckless second degree murder, "it was required to also give manslaughter as a lesser included offense instruction regardless of whether Fish objected to the State's motion for the manslaughter instruction." Defendant knew the court was going to give a reckless second degree murder instruction and, with that knowledge, did not then ask the court to give a manslaughter instruction. Thus, his failure to withdraw his objection to a reckless manslaughter instruction does not take him out of invited error.

¶ 82 On remand, depending on the evidence at that trial, nothing we hold on appeal precludes Defendant from objecting to an instruction on reckless second degree murder or, if the court is still convinced that such an instruction should be given, agreeing to a manslaughter instruction.

---

16. We note the court instructed the jury that " 'vicious animal' means any animal of the order carnivore that has a propensity to attack, to cause injury to or to otherwise endanger the safety of human beings without provocation" and it is unlawful in Arizona to allow a vicious dog off of the owner's property without a leash.

17. We note that the court also reviewed the evidence and concluded that it did not support a lesser-included instruction for manslaughter. We do not opine whether that conclusion was legally correct and thus do not decide Defendant's contention that since the court gave a reckless second degree murder instruction, it should have also given a reckless manslaughter instruction.

## CONCLUSION

¶ 83 Defendant's conviction and sentence are reversed. This matter is remanded to the superior court for further proceedings consistent with this decision.

CONCURRING: PHILIP HALL, Judge and JOHN C. GEMMILL, Judge.