NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID JACOB SANCHEZ, *Appellant*.

No. 1 CA-CR 22-0406
FILED 3-19-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-100229-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Bain & Lauritano PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Tanja K. Kelly
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

**J A C O B S**, Judge:

¶1        David Jacob Sanchez appeals his conviction for second-degree murder, arguing: (1) his trial without peremptory strikes was unconstitutional; (2) the superior court abused its discretion by not using a jury selection questionnaire including questions he proposed; and (3) the superior court abused its discretion by not admitting evidence of the victim's behavior the day before the murder. We affirm because there is no constitutional right to peremptory challenges, the use of jury questionnaires is permissive, and the evidence was not admissible under Arizona Rule of Evidence ("Rule") 404(b).

## FACTS AND PROCEDURAL HISTORY

### A.        N.F. Had an Argument at AutoZone, During Which He Touched, But Did Not Assault, an AutoZone Employee.

¶2        On January 2, 2021, N.F. visited an AutoZone in Peoria over an issue with his car's battery. During an argument with an AutoZone employee, N.F. went behind the sales counter and placed his hands on the employee. N.F. left when the AutoZone manager mentioned calling the police. Peoria police arrived after N.F. left and wrote a report of the incident, reflecting that the AutoZone employee did not want to press charges. Although the store manager described N.F. as threatening, the police report asserted that "[t]here was no assault to an employee."

¶3        That evening, N.F. went to Sanchez's house to hang out with Sanchez's brother. N.F. asked Sanchez if he could borrow money, which Sanchez declined. Sanchez never learned of the AutoZone incident before shooting N.F.

### B.        On the Next Day, Sanchez Shot N.F., Who Sanchez Believed Might Have Been Trying to Break Into His Car.

¶4        On January 3, 2021, at around 9:00 am, N.F. banged on Sanchez's door. Sanchez opened and closed the door twice before N.F. walked away from the house. N.F. walked towards his car, "grabbed something from within [it]," wrapped his shirt around his hand, and began walking towards Sanchez's car. N.F. then unsuccessfully tried to open Sanchez's car. While this was occurring, Sanchez's brother was watching N.F. from inside the house and informed Sanchez that N.F. may have been trying to break into his car.

**¶5** Hearing this, Sanchez grabbed a gun and walked out of his home to confront N.F. Once outside, Sanchez saw N.F. circling his car on the street and then walking towards the driveway. When N.F. was on the driveway, they exchanged words and Sanchez shot N.F. twice after N.F. "reached and made a turning motion," resulting in N.F.'s death. After shooting N.F., Sanchez went inside. Neighbors saw these events and called the police. Once the police arrived, Sanchez told them he shot N.F. twice after he saw N.F. touching his car.

### C. The Court Declined to Use a Pretrial Questionnaire After Discussions With Counsel and Proceeded with Voir Dire.

**¶6** On April 20, 2022, the court held a hearing during which the judge, State, and defense counsel discussed whether they would select jurors via questionnaire or through voir dire. The court decided to proceed with voir dire, finding it could appropriately address any potential issues.

**¶7** During a subsequent pretrial hearing, the court considered the questions it would ask at voir dire and the State's motion in limine. Prior to the hearing, Sanchez proposed using a questionnaire with the following questions: (1) Do you believe a property owner has the right to protect himself or herself from being assaulted on the property owner's property? (2) Do you believe a person has the right to protect himself or herself when a person is on the person's property and comes at them in an aggressive manner? and (3) Do you believe a person has the right to protect his or her own property from being stolen? The court chose to exclude these questions after concluding they were "stake-out questions" and "inappropriate for purposes of voir dire." At voir dire, neither party moved to dismiss any juror for cause and trial began the next day on May 10, 2022.

### D. The Jury Found Sanchez Guilty of Second-Degree Murder After a Nine-Day Trial in Which the Superior Court Precluded Reference to the AutoZone Incident.

**¶8** At trial, the State presented its witnesses, including neighbors who witnessed the shooting, while Sanchez testified on his own behalf. Sanchez claimed he shot N.F. in self-defense because N.F. walked toward him and behaved "aggressively," while the State argued Sanchez did not act in self-defense, given that he emerged from his house, approached N.F. before shooting him, and had time to consider his own actions.

**¶9** During the trial, the State moved to preclude evidence of N.F.'s confrontation with the AutoZone employee on the grounds that it was not relevant and was not admissible as an other act under Rule 404(b).

Sanchez argued the incident corroborated his theory that N.F. was an aggressor, making Sanchez afraid, and buttressed his description of N.F.'s demeanor, making it admissible under Rule 404(b). Sanchez's counsel agreed that as between the AutoZone incident and the shooting, "the facts aren't entirely similar." The court precluded the evidence because the AutoZone incident was very factually distinct from the shooting, time had passed, establishing its facts would require hearsay, and the AutoZone facts had very little factual relationship to the shooting.

¶10 The jury found Sanchez guilty of second-degree murder. The court sentenced him to twenty years. Sanchez timely appealed. We have jurisdiction under Article VI, Section 9 of the Arizona Constitution and Arizona Revised Statutes §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### I. Trying Sanchez Without Peremptory Strikes Was Constitutional.

¶11 Sanchez argues he has a constitutional right to peremptory strikes that his trial violated. We review his challenge to the conduct of the trial for fundamental error because Sanchez did not raise it prior to appeal. *State v. Escalante*, 245 Ariz. 135, 140 ¶ 13 (2018) (explaining that we review a challenge first raised on appeal for fundamental error). To prove fundamental error, a defendant bears the burden of first showing fundamental error and then showing the fundamental error was prejudicial. *Id.* at 140 ¶ 12.

#### A. There Is No Constitutional Error in Omitting Sanchez Peremptory Strikes Because There Is No Constitutional Right to Peremptory Strikes.

¶12 Sanchez argues that the use of peremptory strikes is rooted in tradition and no other state has eliminated their use. While true, none of that makes peremptory strikes constitutionally required. *See Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (explaining "[w]e have long recognized that peremptory challenges are not of constitutional dimension."). Indeed, though George Mason and Patrick Henry urged including peremptory challenges in the Constitution, the Framers ultimately opted not to do so. April J. Anderson, Peremptory Challenges at the Turn of the Nineteenth Century: Development of Modern Jury Selection Strategies as Seen in Practitioners' Trial Manuals, 16 Stan. J. Civ. Rts. & C.L. 1, 18 n.108 (2020). There is no constitutional right to peremptory strikes. There is thus no constitutional error in omitting them.

4

### B.   Eliminating Peremptory Strikes Did Not Prejudice Sanchez.

**¶13**　　　　Sanchez's argument that without peremptory strikes he did not receive a fair trial amounts to arguing that Arizona's regime of for-cause strikes was insufficient to guarantee him fairness.　But Sanchez fails to identify any prejudice to him from the inclusion of any juror he could have stricken peremptorily under the old rules, and thus fails to suggest any prejudice to him from the absence of peremptory strikes.　*Escalante*, 245 Ariz. at 140 ¶ 13.

## II.   The Court Did Not Abuse its Discretion By Conducting Voir Dire Without Using a Questionnaire Including Questions Sanchez Proposed.

**¶14**　　　　Sanchez argues the court abused its discretion by conducting voir dire without using a jury questionnaire.　We review the court's decision not to use a questionnaire for an abuse of discretion.　*State v. Thompson*, 252 Ariz. 279, 293 ¶ 45 (2022) (reviewing objections concerning voir dire for an abuse of discretion).　We see no abuse of discretion here for two reasons.

**¶15**　　　　First, Rule of Criminal Procedure 18.5 gives the superior court discretion to decide whether to use a questionnaire.　Ariz. R. Crim. Pro. 18.5(c) ("Unless the court orders otherwise, the court should require each prospective juror to complete a case-specific questionnaire in a manner and form approved by the court.").　Here, the court ordered otherwise.　And even absent an "order[] otherwise," the rule is merely advisory.　It states that the court *should* use questionnaires — not that it *must*.

**¶16**　　　　Second, Sanchez fails to identify any error in declining to ask questions he proposed by questionnaire.　The court found Sanchez's questions were "stake-out questions" that were "inappropriate for purposes of voir dire," and Sanchez fails to explain why this was an abuse of discretion.　He thus waived this argument.　*Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022) (holding that a litigant waives issues and arguments when they are not supported by authority, citations, or explanations).

## III.   The Court Did Not Abuse its Discretion by Granting the State's Motion in Limine Precluding Evidence of the AutoZone Incident.

**¶17**　　　　Sanchez argues the court abused its discretion by excluding evidence of the AutoZone incident.　Sanchez contends Rule 404(b) allows evidence of the incident to corroborate his claims of self-defense and that N.F. behaved aggressively when Sanchez shot him.　The State counters that

the AutoZone incident is not admissible because it does not fit within any of the categories of other acts listed in Rule 404(b)(2). The State also argues the AutoZone incident does not corroborate Sanchez's testimony. We review evidentiary rulings for an abuse of discretion. *State v. Romero*, 239 Ariz. 6, 9 ¶ 11 (2016).

### A. The AutoZone Incident Was Not Admissible Under Rule 404(b) to Show a Motive or Intent by N.F. to Attack Sanchez.

**¶18** As Sanchez correctly notes, prior acts by victims are admissible under Rule 404(b) to show motive and intent only where the defendant knew of those acts. *State v. Fish*, 222 Ariz. 109, 123 ¶ 45 (App. 2009) ("While the [prior act] evidence was arguably offered in part to show the Victim's motive and intent to attack the Defendant, this stated purpose necessarily relates to the Defendant's state of mind and as such, to be admissible, the Defendant must have known of the prior specific conduct."); Ariz. R. Evid. 404(b)(2) (explaining that evidence of other crimes, wrongs, or acts may be used for "purposes, such as proof of motive, opportunity, intent."). But the court found Sanchez did not know of the AutoZone incident, and he does not appeal that finding. As such, the court did not abuse its discretion by precluding reference to the AutoZone incident. *Fish*, 222 Ariz. at 123 ¶ 45.

### B. The AutoZone Incident Was Not Admissible Under Rule 404(b) to Corroborate Sanchez's Account of N.F.'s Behavior When Sanchez Shot Him.

**¶19** Sanchez argues the AutoZone incident was admissible under Rule 404(b) to corroborate his descriptions of N.F.'s behavior relating to the shooting, citing *Fish*, 222 Ariz. at 123 ¶ 45. The State argues the incident does not corroborate Sanchez's testimony and does not bolster Sanchez's credibility.

**¶20** The State is correct, for reasons the court cited in precluding the evidence. The court explained that to be admissible as corroboration, "the prior acts have to be very similar to the facts of that [criminal] case, which they were in *Fish*." Even Sanchez's counsel admitted that, as between AutoZone and the shooting, "the facts aren't entirely similar." Yet that admission understates it. A verbal altercation over a failed car battery that includes touching a store clerk is not like walking around an acquaintance's car and then stepping toward them as they approach you. We do not see similarity, much less "very similar" facts, as *Fish* required for admission of a victim's prior acts that were unknown to a defendant. *See*

222 Ariz. at 125 ¶ 49 (allowing admission of victim's other acts unknown to defendant because defendant's description of victim's unknown other act was "very similar" to defendant's claim of self-defense, and because there were no other witnesses to defendant's actions).

**¶21** The rest of the analysis in *Fish* shows the superior court did not abuse its discretion by precluding the AutoZone incident. The court in *Fish* reversed the exclusion of the other act evidence to corroborate the defendant's claim of self-defense in part because there was an evidentiary vacuum: "there was no other witness to the shooting who could testify." *See id.* Here, as the superior court noted, four witnesses saw Sanchez shoot N.F. And the other act evidence had special probative force in *Fish*, when the defendant gave a statement immediately after a shooting that very closely tracked the victim's other acts that were unknown to the defendant. Sanchez gave no such statement immediately after shooting N.F. that precisely matched the AutoZone facts, making them specially corroborative. Accordingly, *Fish* does not aid Sanchez.

**¶22** In a related vein, Sanchez cites *State v. Zaid*, 249 Ariz. 154 (App. 2020), which for the same reasons suggests no error in precluding the AutoZone incident. There, the court affirmed the superior court's exclusion of evidence of the victim's prior violent acts, applying *Fish*. *Id.* at 159 ¶ 17 ("Zaid has not established any reason the other violent acts would have been particularly probative, such as the complete lack of any other eyewitnesses or the high degree of similarity between the acts as was present in *Fish*."). Sanchez correctly cites the standard in *Zaid*, which is drawn in turn from *Fish*. As explained, the superior court followed *Fish* in precluding the AutoZone incident, and thus did not abuse its discretion.

## CONCLUSION

**¶23** For these reasons, we affirm.

