NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC MATTHEW CAROZZA, *Appellant.*

No. 1 CA-CR 22-0359
FILED 6-1-2023

Appeal from the Superior Court in Yavapai County
No. P1300CR202100203
The Honorable Krista M. Carman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Law Offices of Stephen L. Duncan PLC, Scottsdale
By Stephen L. Duncan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Anni Hill Foster joined.

---

**H O W E**, Judge:

**¶1**          Defendant Eric Matthew Carozza appeals from his convictions and sentences for aggravated assault, disorderly conduct, and assault. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**          In 2021, Carozza lived with his girlfriend, Lindsay Rae Excell, in Prescott Valley, Arizona. Their next-door neighbor was Kyle.[1] The neighbors had no issues in the past, sharing pleasantries on occasion.

**¶3**          One afternoon in February 2021, Kyle's friend Chad, came to visit him. When Chad arrived, he parked in front of Kyle's house. Kyle and Chad began chatting with Carozza over the fence between their properties. Carozza offered to give Chad a cigarette and went inside his house, leaving his front door open. Chad approached Carozza's front door, stopping when he heard Excell shouting expletives. Carozza told Excell to "shut up," and walked back out of the house.

**¶4**          Without explanation, Carozza pulled out what looked like a gun, pointed it in Kyle's direction, and said, "I hope you know God" or "I hope you know Jesus." Fearing for Kyle's life, Chad grabbed for the gun and pushed Carozza back into his house. Carozza hit Chad in the face, placed him in a headlock, and pointed the gun at his head. At some point, Excell hit Chad in the face. Chad broke out of the headlock and backed out of the door as Carozza continued to point the gun at him.

**¶5**          After seeing Carozza pointing a gun, Kyle ran into his house and retrieved his own gun. Kyle waited in his driveway until Chad came out of Carozza's house. Kyle and Chad then called the police. When officers arrived, Carozza ignored their commands and barricaded himself inside his house. The officers eventually arrested Carozza and Excell, who both appeared to be under the influence of unidentified substances. The officers

---

[1]          We use pseudonyms to protect the privacy of the victims.

discovered multiple airsoft or BB guns in Carozza's house, which looked like real guns. They saw injuries to Chad's face consistent with being hit in the face.

¶6        Once in custody, Carozza began acting increasingly erratic and admitted to taking "some sort of pills." The officers did not interview Carozza or Excell. Officers would later obtain recorded jail calls of Carozza telling Excell, "we've got to get our stories straight," adding that "they came into our house." Excell indicated that she could not remember and "seemed to be relying on [Carozza] telling her what happened."

¶7        The State charged Carozza with one count of kidnapping, a class 2 felony, two counts of aggravated assault, class 3 felonies, one count of assault, a class 1 misdemeanor, and two counts of disorderly conduct, class 1 misdemeanors. The State charged Excell as his co-defendant.

¶8        Before trial, Carozza moved to admit evidence of Chad's prior violent acts under Arizona Rule of Evidence ("Rule") 404(b), arguing that Chad's prior felony convictions for aggravated assault and burglary-related offenses showed a pattern of using "assaultive behavior" to exert power and control over others. Carozza contended that this evidence would support his justification defenses at trial, which would paint Chad as the initial aggressor. Carozza listed Chad's prior felony convictions without supporting documents or witness affidavits. The State asserted that Carozza was attempting to "tar" Chad's character, arguing the age and "varied nature" of the convictions made it difficult to determine their relevancy to the current case. The trial court denied the motion, finding that a defendant claiming self-defense cannot introduce prior violent acts not known to him at the time of the offenses. The court concluded that Carozza did not know of the convictions in February 2021, adding that most of the convictions "occurred in the 1990's."

¶9        In a similar filing, Excell moved to admit evidence of Chad's prior violent acts under Rule 404(b) and Carozza joined the motion. Excell argued that evidence of Chad's prior felony convictions should be admitted, not to support a self-defense claim, but to show Chad himself had a pattern of using self-defense claims to avoid repercussions for his violent conduct. As relevant here, Excell moved to admit Chad's conviction for aggravated assault from 2009 based on its related presentence report.[2]

---

[2]        Excell also sought to admit Chad's burglary conviction from 2000. Carozza does not argue this conviction should have been admitted on appeal.

Excell alleged that, while in prison for another conviction, Chad beat another inmate to death and claimed the victim "swung at him first." The investigation revealed that the murder was part of an "arranged hit" by the Aryan Brotherhood and Chad pleaded guilty to aggravated assault. Excell claimed that the evidence would be used solely to impeach Chad about prior self-defense claims, and would not be presented through a separate fact-witness. Carozza added that the evidence should be admitted to attack Chad's credibility because this case involved a "he said, she said" dispute, asking to incorporate by reference arguments from his previous motion.

¶10        The trial court affirmed its previous ruling on Carozza's motion, finding he did not know of the prior violent acts in February 2021 and the evidence could not be used to show Chad was the initial aggressor. Looking to Excell's motion, which Carozza joined, the court found that they failed to establish sufficient similarities between the alleged prior violent acts and the facts of the current case. The court noted that the "factual discrepancies" would confuse the issues for the jury, leading to a prejudicial result. The court precluded any mention of the underlying facts associated with Chad's aggravated assault conviction. The court, however, found any evidence of Chad's "propensity for violence" admissible as pertinent character trait evidence under Rule 404(a)(2), which could be proven by reputation or opinion evidence under Rule 405(a). The court also permitted the use of Chad's two prior felony convictions, in sanitized form, for impeachment under Rule 609(a).

¶11        At trial, Carozza presented several justification defenses, asserting that he acted in defense of himself, his home, and Excell. Carozza claimed that Chad kept parking in front of his house, causing tension between the two men. On the day of the incident, after arguing over parking, Chad followed Carozza into his house and when Excell confronted Chad at the front door, he hit her in the face. Seeing this, Carozza stepped in to protect Excell and wrestled Chad to the floor. Carozza grabbed a BB gun and told Chad to get out of his house. When the officers arrived, he had a panic attack and ran inside to take anti-anxiety pills. He took sleeping pills by mistake, which caused him to seem impaired that day. Excell testified that Chad barged into their house uninvited, she confronted him, and he hit her in the face. She had issues recalling anything after that point, remembering only that the situation was chaotic.

¶12        Kyle testified that he did not hear Chad make any threats and that Carozza pulled a gun for seemingly no reason. Chad denied threatening Carozza or Excell, parking in front of their house, or entering their house uninvited. Chad admitted to having a prior felony conviction

but, consistent with the court's pretrial ruling, did not testify about the nature of the conviction or its underlying facts. Carozza did not question Chad further about the convictions and did not introduce character trait evidence in the form of reputation or opinion. The trial court instructed the jury on the various justification defenses Carozza raised, providing an instruction on self-defense, defense of a third person, and defense of premises. *See generally* A.R.S. §§ 13–404 to –407.

¶13 The jury found Carozza guilty of two counts of aggravated assault and also found aggravating circumstances. The trial court rendered the verdict as to the misdemeanor offenses, finding Carozza guilty of one count of assault and one count of disorderly conduct. The jury and the court, respectively, found Carozza not guilty of kidnapping and one count of disorderly conduct. Excell was acquitted of all counts. The court sentenced Carozza to concurrent terms of 11.25 years' imprisonment for the two aggravated assault counts, and to time served for the counts of assault and disorderly conduct. Carozza timely appealed.

## DISCUSSION

¶14 Carozza argues that the trial court erred by precluding him from introducing evidence of the victim's prior violent acts. He contends that the court's ruling deprived him of his constitutional right to present a complete defense. We review evidentiary rulings for a clear and prejudicial abuse of discretion. *State v. Ayala*, 178 Ariz. 385, 387 (App. 1994). We defer to the court's assessment of relevance and unfair prejudice. *State v. Via*, 146 Ariz. 108, 122 (1985).

¶15 Although due process guarantees defendants "a meaningful opportunity to present a complete defense," *California v. Trombetta*, 467 U.S. 479, 485 (1984), defendants are still bound by the established rules of evidence, *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Under Rule 404(a), character evidence is generally inadmissible to prove that a person acted in conformity with it. Rule 404(a)(2), however, provides an exception to this general rule, allowing the defendant to offer evidence of a "pertinent trait of character of the victim of the crime" to show conformity with it, "even if the defendant did not know about that character." *State v. Zaid*, 249 Ariz. 154, 159 ¶ 18 (App. 2020). Rule 405(a) and (b) govern the method of proving the victim's character, providing that such character evidence may be in the form of reputation or opinion but not specific acts evidence unless character is an "essential element of a . . . defense . . . ."

¶16        Under 404(b)(2), evidence of a person's other acts is admissible to show motive, intent, or to corroborate the defendant's "version of the events." *State v. Fish*, 222 Ariz. 109, 122–23 ¶¶ 42–45 (App. 2009). But when evidence of specific acts is offered to show the defendant's state of mind and the reasonableness of the defendant's response to the victim, such evidence is inadmissible unless the defendant knew of the specific acts before the incident in question. *Id.* at 121 ¶ 37. In determining whether a prior violent act may be admitted under Rule 404(b), the trial court must first look to whether (1) the act has been offered for a proper purpose; (2) it is relevant to prove that proper purpose; (3) its probative value is not substantially outweighed by a danger of unfair prejudice; and (4) clear and convincing evidence shows the victim committed the act. *Id.* at 123 ¶ 43; *see also* Rules 402 (relevancy standard), 403 (balancing test). In weighing the probative value of the evidence, the court may consider "the strength of the evidence of the prior violent act, the degree of similarity between the prior violent act and the event at issue, the need for the evidence, whether alternative proof would be effective, whether the prior violent act was recent or remote, and the degree to which the evidence would likely engender hostility in the jury." *Zaid*, 249 Ariz. at 158 ¶ 13. Also relevant to this inquiry is whether the defendant provided his version of events to police officers "at a time when he did not know of the victim's prior violent acts and could not have fabricated his account based on them." *Id.* at 159 ¶¶ 14, 16.

¶17        Applying these legal standards, the trial court did not err in finding the victim's prior violent acts inadmissible at trial. Even if Excell and Carozza had offered the acts for a proper purpose under Rule 404(b), the court properly concluded that the probative value of the evidence was substantially outweighed by a danger of confusing the issues and unfair prejudice. *See* Rules 403, 404(b)(2). That Chad may have claimed self-defense in a prior case does not, on its own, portray a pattern of conduct relevant to Carozza's defense. The proffered acts, at best, involved a prison fight resulting in death or, at worst, a targeted gang "hit." Here, Carozza's version of events involved a parking dispute that ultimately led to Chad's unlawful entry into his home and an assault. That Chad may have alleged self-defense in both cases does not have the degree of similarity needed to show the acts themselves were "highly relevant" to Carozza's claims at trial. *See Fish*, 222 Ariz. at 126 ¶ 53 (finding that the evidence uniquely relevant where both the proffered acts and the defendant's version of events involved confrontations over the victim's dogs). As the court concluded, given the nature of the evidence, the probative value of the proffered acts was substantially outweighed by the danger of confusing the issues and unfair prejudice.

**¶18**        In addition, Carozza and Excell provided limited details surrounding Chad's prior convictions. Excell provided a summary of Chad's aggravated assault conviction from 2009, citing only to its associated presentence report, and conceded that the information would only be used to impeach Chad as to prior self-defense claims. Even now, on appeal, Carozza provides no further details, arguing only that the trial court should have admitted Chad's "violent history" because he claimed self-defense in both the prior and current cases. Given the lack of supporting details and the age of the conviction, the court did not err in precluding its use at trial. *See* Rule 403; *see also Zaid*, 249 Ariz. at 158 ¶ 13 (allowing the court to consider the strength and recency of the proffered acts in determining relevancy). Moreover, this case did not involve a defendant providing unique details, similar to the prior violent acts, before he had time to fabricate his version of events. *See Zaid*, 249 Ariz. at 159 ¶¶ 14, 16. On this record, the court did not err by precluding evidence of the victim's prior violent acts.

**¶19**        Finally, Carozza appears to conflate prior violent act evidence with character trait or reputation evidence under Rules 404(a)(2) and 405(a). To the extent that he raises a Rule 404(a)(2) or 405(a) argument, the trial court found such evidence to be admissible. Carozza, however, made no attempts to introduce character trait reputation or opinion evidence associated with Chad at trial. Again, on this record, Carozza has shown no error. *See State v. Campbell*, 146 Ariz. 415, 418 (App. 1985) (concluding that a "mere assertion . . . is not sufficient to show any error").

## CONCLUSION

**¶20**        For the reasons stated, we affirm Carozza's convictions and resulting sentences.

